61282, Santander Holdings, USA, Inc., Course of the United States. Good morning, and may it please the Court, I'd like to reserve two minutes for rebuttal from me. You may. Thank you. Two appellate courts have addressed the Starrs Trust, and they both concluded that the transaction lacked economic substance, the Second Circuit and the Federal Circuit, and they concluded that the transaction consisted of meaningless circular cash flows that were inherently profitless without the foreign tax credits. Can we back up? Are you arguing for summary judgment in your favor? It doesn't seem to me that that's an issue on appeal. We are, but our primary view of the request is summary judgment in our favor with regard to the foreign tax credits and related transaction costs, and that would be unjust for penalties. And do you have a fallback position? Our fallback position is for me to infer trial with regard to whether the trust had economic substance and business purpose. And what are the subsidiary questions to that which you consider to be issues of fact to be determined by a trier of fact? Or do you just think that such a question should be put to the jury? Well, since our primary position is that... I'm asking about your secondary position. The issues of fact would be the business purpose, what taxpayers' actual motivation was. It's the government's position that the taxpayer was motivated solely by the foreign tax credits in this case. A number of other trial courts have so found, and those findings were affirmed by the Second Circuit and the Federal Circuit. You know, the First Circuit has not clearly adopted any subjective intent test here, at least if you read Justice Breyer's opinion. And you almost appear to be characterizing this as a matter of the subjective intent of the taxpayer. Does your argument really depend on that? It does not. What our argument is focused on is the district court's error in concluding that the BXP in this case generated an economic profit for sovereign. That determination conflicts with the Second Circuit and the Federal Circuit's contrary determination that no matter how you characterize the BX, it's either a tax effect or otherwise this transaction was inherently profitless because the taxpayer was required to pay two dollars of foreign tax for every dollar of BX payment. It's just as a mathematical matter. It couldn't gain a profit without the foreign tax credits. And have you given up the rebate argument? We have not given up the rebate argument. We've briefed them on their opening brief and our reply brief. But we do point out that if the court agrees with the Federal Circuit and the Second Circuit that foreign tax is probably accounted for as an expense in this transaction, it need not reach the BX argument. It's not to the BX argument. If you treat the BX as income, then you have to treat the foreign tax as a cost of obtaining that income. And doing so demonstrates the transaction is inherently profitless. In addition to being inherently profitless, the transaction, the trust transaction, also lacks a genuine economic effect as both the Second and the Federal Circuit further determined. The trust here operated the same way as the trust did in banking and work in Salem. And this court both determined that it lacked economic reality, just meaning circular cash flows that had no impact on the taxpayer's business interests, didn't create any economic risk for the taxpayer. The taxpayer maintained control of the assets the entire time the assets left the United States. And Salem doesn't even dispute that those circular cash flows were economically empty. Instead, it argues that they're legally relevant to its newest tax position. And that's incorrect. If you run out of time, we'll give you some more. But I think Judge Sully and I both have some questions. Of course. My first question was, I think we have to be somewhat precise in the use of words here. And you just prefaced that last argument by talking about the fact that the transaction lacked economic effect. I think this transaction has a definite economic effect. I think it may lack economic substance. It may lack economic reality. But it certainly has an effect. If you consider the tax aspects, it was a profitable transaction for the bank. That's correct. But the entire economic effect, I mean, besides the tax benefits, because... I think what you really mean is that the government's position is that it lacks economic substance. Yes. And I'm still curious about the initial question, Judge Lynch has. Because I'm struggling with the notion of what issue there is here that would require a jury trial. I thought that the facts here were, or the material facts at least, were undisputed. What isn't undisputed is how you characterize certain things. But those seem to me to be essentially questions of law. Well, questions of the characterization of a transaction can't be determined in a fashion like you moving up. What you're asking is not a jury trial on any issue. But that's your secondary position, is a jury trial. And what I don't understand is, okay, you get the secondary relief that you want and the district judge says to you, what do you want me to instruct the jury on? What issues do you want the jury to resolve? Excuse me, before you get there. One of the complaints made about the summary judgment ruling was it disregarded expert testimony. It also disregarded the actual documentation of the transaction. Was there something else besides those two categories of evidence? That was with regard to how you characterize the BX payment and whether it has a tax effect or not. The point is it disregarded fact evidence from the taxpayer that would have fully understood 100% of the fraud. Okay, you're not being responsive. If you want a jury trial, what are the issues? And are you saying that the summary judgment process short-circuited the presentation of evidence that would be relevant to those issues? Our primary position is that it does. Would you please stop that? I'm not even certain we have jurisdiction over your primary argument. I've asked about your fallback position, as has Judge Selya. If the court were to determine that the transaction should not, that the court should not take the foreign taxes into account, then that goes to the question of whether the BX payment was a tax effect or not a tax effect, which depends on how the cash flows in this transaction actually worked. And there's factual evidence and expert evidence describing how those cash flows worked. In addition... Excuse me, was that evidence contradictory? In other words, did the experts disagree about how the cash flow... I don't think they did. To get to your question, perhaps it's a factual issue for which it would not need to be presented to the district court. And the district court must follow racistly the court in that case that agreed with the Second Circuit with regard to the characterization of the BX payment and that the government had moved, for some reason, on that issue over with the government that, in fact, it was a tax effect. So, in that extent, we would not need a jury trial with regard to how it appeared towards the BX payment. It's only if the court were to determine, and I don't think it needs to determine, that the subjective motivations were something that the court should look at. And the documentation between the negotiating parties as to this transaction? Was that largely agreed on? It was largely agreed on, including the key documentation, which is the taxpayers' understanding of how the cash flows worked, which is linked to the record and which we've reprinted and are implied with on page 79, which is the graphic that clearly illustrates the reason you're asking for a jury trial. Only other parties could visit. Oh, I didn't understand that. Only other parties. And I think the parties are in agreement that they've said it's not asked as an alternative relief for a remand with regard to anything. They've just asked for refinement. And we've said that we're just going to reverse all of the court's ruling with regard to the foreign tax credits and trial the parties for the disallowed foreign tax credits for related transaction expenses. That's helpful. So one of the key questions in this case does have to do with how much the common law and courts should engage in an economic substance analysis where the taxpayer has largely complied or apparently entirely complied with the regulatory requirements for a transaction. And various amici take various positions on whether there is anything left of the economic substance doctrine, particularly for the foreign tax credit, which is said to be a creature of treaty and the like. What is the government's position on this point? Well, the most sophisticated tax shelters comply with the technical rules. Some design ways that can be promoted as something that complies with the technical rules. Those rules are written in the Congress and tried for me to apply to transactions that have economic substance. That is the underlying assumption. And the rule of the economic substance doctrine is a critical rule. It's a critical cornerstone of tax enforcement as Congress has recognized when it codified it is to test that assumption. To say, hey, when we look at whether the rules apply, first determine if this transaction has economic substance. And the doctrine applies to all tax benefits including the foreign tax credit. When Congress codified the doctrine, it knew that the Treasury Department was going after stars and were able to form tax credit generators and didn't create a carve-out, as the Second Circuit explained. Are U.S. treaties, as we promote this as an issue that's really raised by women making the tax payer, recognize that it doesn't apply to transactions that lack economic substance? The Federal Circuit ruled that in Salem, citing a woman, the D.C. Circuit, did not create a loan to a commercial. So let me just be sure I have the context correct. We're talking about a three-year time period. Is it? The transaction is designed to last for five years. It was ended in 2003, sent in in 2008, and ended early when they got word that the Treasury was going after this transaction. So Treasury now has regulations under which this particular STARS program would not be allowed. That is correct. In 2007, Treasury made clear that for transactions prior to the regulations effective date, they would be going after them with the economic substance doctrine. That's a typical fact pattern in the shelter cases. Okay, and then independently of that, we have the promulgation in 2010 of an economic substance doctrine by Congress and Congress authorized the Secretary to attack this expense issue through regulations? To pre-regulations. But the Secretary has chosen not to promulgate such regulations but merely to address this on a case-by-case basis. For instance, so far in 2010, after the codification, Treasury issued a notice citing requirements 2010-62 saying that regulations were forthcoming and until regulations are forthcoming this issue in court should continue just to treat for taxes and expense in appropriate cases. And we think that the First Circuit and Second Circuit did so appropriately here particularly in 2007 because the tax was artificially generated and was the equivalent for the revenue in the transaction that the ex-payment for $2 of tax could be $1 of the ex. Okay, do you have anything else on your primary argument? I know you have a question. May it please the Court. Jonathan Massey for Santander. I'd like to start by discussing Judge O'Toole's decision. Judge O'Toole's decision expressly analyzed virtually all the arguments the government has made in its brief and he applied a very specific legal test, the pre-tax profit test and found that there were two legal questions that are determinative here. First, whether the BX payment is properly treated as income and second, whether the taxes that Sovereign paid to the United Kingdom are to be treated as taxes rather than expenses under the pre-tax profit test. He found that the transaction had economic substance because it was having positive pre-tax profit impact. And one thing that Judge Selya pointed out was that counting the tax effects, it certainly has an economic impact as which Judge Selya said. And I would just like to add that not counting any tax effects, it also has an economic impact. It also has economic substance. If you disregard all tax effects in this transaction, that is relatively undisputed. The government's point is that the BX payment or the Barclays payment shouldn't be treated as income or revenue. But they would concede that if it is treated as economic income to Santander, then the transaction passes the pre-tax profit test. So in this area, we think, as Judge Lynch pointed out, this is a federal common law area. And I know your auditors are very familiar with the limited role of federal common law in statutory schemes. Judge Lynch wrote an opinion called Espinoza against the liberty erroneously at liberty principle under criminal law. Judge Selya has written many federal common law opinions. We noticed an insurance case called Commercial Union Insurance from 1992. So this lesson, the lesson here, though, is that we have to be careful in this realm. Our position is not that there's no role for the economic substance test. We believe it exists. We believe it's an important tool. So did Judge O'Toole. But it has boundaries. It has limits. And one of the limits is when Congress has identified what is a rebate and what is a subsidy under a statute which says that the rule for a statute in Section 901I is both direct and indirect payments. And then the regulation implementing that adopts both a form and a substance test. So the government in this court concedes that the Barclays payment is not a form or substance under the statute and under the congressional scheme. And we think it would be improper, inappropriate, for a court to attribute a different substance to that payment than the one designated by Congress. And Judge O'Toole also pointed out that even if it were an effective subsidy, even if the government were right on that point, under the well established principle of the old colony case, which is that if you pay somebody else's taxes, that is still income to them. Yes, but I'm not certain this is an old colony situation. And I'm not certain it is so clear that old colony dictates this result. And Judge O'Toole's reasoning does seem to rely almost entirely on a plain but simplistic reasoning about what old colony actually holds. Well, I suppose he's wrong. Right, two points, Your Honor. First is old colony is a second argument for us. We think Judge O'Toole clearly did address the government's position that this was not an effective subsidy or rebate. And that is a sufficient basis for affirming on the Barclays payment, which then qualifies this transaction as having economic substance. So, Your Honor, need not read old colony. But just to support Judge O'Toole for a moment on that, I mean, he is in agreement with the Fifth Circuit and the Eighth Circuit in the compact and IES cases and the Federal Circuit. The Federal Circuit ruled for us on the Barclays payment issue and relied on old colony. So I don't think Judge O'Toole is wrong. But I don't think Your Honors need to address that. Because there is sufficient basis simply to affirm on the ground that when the government says this is an effective rebate, this is not an effective rebate. It's not a subsidy. We take it at its word and under the economic substance doctrine, that's all we need to say. And that frankly addresses the question. Judge Lynch asked questions about the 2007 regulation and the 2010 statute. And I just wanted to mention that those support our position as well. Because in 2007 what the Treasury did in adopting this regulation was it chose it can address these questions. And interestingly, it did not rely on the government's theories in this case. The government's legal theory in this case is primarily the rebate question. And as I said, whether taxes should be treated as expenses, foreign taxes should be treated as expenses. It didn't promulgate the regulation on that basis. It adopted a voluntariness theory in its regulation. But what significance does that have? I mean, you have to decide this case on the basis of the law as it was when these tax returns were filed. Exactly. The regulation doesn't apply in this transaction. I'm just pointing that the regulation doesn't offer any support for the government's legal theory here. I don't think the government said that it did. No, they didn't. And I'm just pointing out that what I need to say is ultimately there's no need to distort the economic substance doctrine in this case because the government can always adopt regulations to do what it, to address any issues that it sees. And frankly, it has had rulemaking authority under the 2010 statute and it's declined to exercise it. And so we don't think the government should be coming to this court and asking this court to do its work for it. It has the authority to address this question without involving your honors. And that is a safer approach. It is one that the government, when the government adopts regulations, it can write them as detailed and the 2007 regulation has all 12 examples. It's wonderfully detailed. It's not the kind of thing this court could issue. But you've already said it. I'm sorry. Please stop. I'm beside the point. Yes, I'm sorry. I mean, the issue here is at least the thing you've got to convince me of because I'm persuaded at this point, which doesn't mean I've made up my mind the other way. I'm just as usual in a fog. What is the economic substance of this transaction? Well, Judge O'Toole... Don't tell me what Judge O'Toole said. I've read Judge O'Toole's opinions. And if I were convinced by Judge O'Toole's reasoning, I wouldn't ask you the question. What do you see? Straight out, what's the economic substance? How do I write an opinion that says this transaction has economic substance? Right. I would start with then-Judge Byers' test in Dewey's. Is this a pre-tax profit? Yes, it is. Therefore, it has... You're not limited... The economic substance doctrine is not limited to pre-tax profit. Just because you have pre-tax profit doesn't mean the transaction is economic substance. Well, we think that it may not be an exclusive test and I think the government may agree that it's not the only way of demonstrating that a transaction is not a sham. But a transaction that has objective a substantial prospect for profit would have economic substance. I don't think you have to go there, but I do think it would be odd to say... I mean, we're a bank. Our job is to make money. If we've earned a substantial amount of money, in this case, the Barclays payment, $198 million. Hard to say that that is not enough to demonstrate economic substance, but there's more. In order to earn the money, Barclays had to put... Sovereign had to put $6.7 billion in a trust. In a United Kingdom trust. That money, just to be concrete about it, those are things like auto loans that are otherwise earning money, and that money goes into a... those assets go into a trust. Those assets are encumbered by the trust. It can't be withdrawn for five years without Barclays permission, unless the whole transaction is undone. And the government's own witness, one of the government's witnesses, page 80, 76, Joint Appendix page 76, says that this is a substantial encumbrance on Sovereign, because it's got to stick these assets in the trust. They're not available for other transactions now. They're there. They're sitting in the trust. They are earning interest, but not just the... they're not just earning the auto loan interest. They are now securing a financing, which was a $1.15 billion loan, which was given to Sovereign. And now the government argues about whether it's the right interest rate, whether it's... whatever. But there's undeniably that loan has economic substance. And now we're bifurcating this... the government has insisted on bifurcating the loan. Why? Why did they? Because they... And you've acceded to it. We acceded because we thought that even under this highly abstracted hypothetical that the government was posing, that we could demonstrate as a matter of law that the trust by itself had economic substance. For the reasons I'm saying, even because... even... I don't think you have to look to the loan to be able to say the trust was a secure... provided security for the loan. We're not necessarily... I think you can make that point even under their bifurcated theory. But basically the reason we agreed to their bifurcation is because they were saying there were all sorts of fact issues. Understand, it appears from this morning that those are all gone. The only trial they want is on penalties. That's fine with us. We think we don't need any trial because we're hoping for affirmance. But in any event, the... to go back to what the substance is. So the auto loans are now throwing off interest. They're generating trust income. And they're also providing a basis for us to get security... to get financing at a 1.15 billion dollar loan. They would be throwing off interest if they weren't being put into the trust. Correct. And that's what you... that's correct. So what does that wash out? So it comes down to it was necessary to get Barclays to loan us the money. To loan us the money and to pay us $198 million dollars. In what we treat as a reduction in interest, but the government is saying is a separate Barclays payment. Correct. So those are the two things that show the economic substance of the trust? Yes. And the fact that the... right. And of course the treaty, while we don't think it eliminates the economic substance doctrine, does establish that the creation of the UK trust is an act of economic significance. Because it creates a tax obligation for us in the United Kingdom. And there's no dispute, as Yolanda pointed out, that those rules were complied with. So it's just a normal everyday garden variety case. I named my English cousin as a trustee of my trust. I will now owe UK taxes. That trust will owe UK taxes. And they'll get a credit. And that's a garden variety case under the treaty. There's no objection to that. And the only difference between that case and this case is that we also got $198 million dollar Barclays payment. So I think the government's main objection here really is that they think that the mere creation of a UK trust ought not to be enough to give us a foreign tax credit. And that's an issue that the treaty decided. And so your honors can defer to the decision of the political branches to say that the creation of a UK trust with a UK trustee is enough to create enough of a nexus. It's enough economic stuff happening overseas. Even though the United States, that's okay under the treaty. The treaty doesn't require the assets to be offshore. The treaty just says what is the citizenship of the trustee. So that decision has been made for us by the political branches in the treaty. And your honors need not go there. And so honestly, what the government's saying here is you can think of several simpler cases that I think illustrate what's going on. If a European government gave tax credits for a renewable energy project and the US bank lent money at good interest rates for the bank based on the fact that the European company was getting tax credits, the government would say foreign tax credits are fueling this. It's a tax shelter. It's not a tax shelter. It is an ordinary complying with the treaty is not a tax shelter. These things happen in international commerce and there's nothing wrong with it. And so I think the fact issues are off the table. Okay. You're asking us to create a circuit split. And so tell me specifically why you think the Second Circuit and the Federal Circuit are wrong. The Second Circuit treats this as a fact issue and relies on the fact finding of the tax court. We think that it's not a fact issue in this circuit and it's really not a fact issue under Frank Lyon, the Supreme Court case, footnote 16. It's not even a fact issue. It just says the economic substance question is a legal question. The ultimate conclusion. But in fact they had fact findings from a trial judge which then the Eighth Circuit Yes, you're correct, Your Honor, and you're right. But I think even here the government is saying there are no material facts in dispute. This is not a who, what, where question. The record is what it is. Their negotiating history is what it is. And so there's no question of trial. Okay, so let's go back to the Second Circuit treating it as a fact issue. I think that's our main point on the Second Circuit that you really shouldn't follow it because it's got the wrong legal standard to it. Which is that it's a fact question. Even in this case the government is not asking for trial anymore. So I don't see what facts they're arguing about. The Federal Circuit is agreed with us on the rebate issue. And then on the second issue, whether foreign taxes should be treated as expenses, it comes very close to agreeing with us. If Your Honors look at page 949 and 950 of the Federal Circuit's opinion, it says treating foreign taxes as expenses would be wrong because it would discriminate against transactions, against cross-border transactions. The same transaction might be profitable in the U.S. but unprofitable abroad. And it cites a couple of scholarly articles, or I don't know if they're law reviews, I can't remember exactly, but you'll see them, that basically make the same analogy, the same example that we give in our brief about if you lend this money at 4% and borrow it at 3%, that same transaction would be profitable in the U.S. but not profitable overseas. So the government, the Federal Circuit agrees with us up to that point. And then it adopts a test which is basically whether there's been a meaningful economic change in position on the part of the taxpayer and whether the taxpayer has a motive that doesn't show a valid business purpose. And the first part of that test we think we would meet in any event but it doesn't have a solid basis in this Circuit's law because we think DeWeese does point to a pre-tax profit test as a more predictable and a more certain standard. And the motive test, as Judge Lynch pointed out, is really not consistent with this Circuit's precedent. So Judge Lynch, the last thing I would like to say is you're going to face a Circuit conflict either way because the 5th and 8th Circuits clearly hold that Dutch taxes were treated the same as U.S. taxes. But not in Starr's case. Not in Starr's case, but it's the same legal principle. Well, you can argue that, but it doesn't create a Circuit split. You can argue that the decisions might be inconsistent. Right. But you want us to take the same transaction that two other Circuits have said lacks economic substance and say for whatever reason that both of them are wrong. We do. Although I think we agree with a lot of what the Federal Circuit said up until the last point. And, you know, the government pointed out these cases went to the Supreme Court and the government opposed cert on the ground that the records that they promulgated meant that there was no need for Supreme Court review. So I don't think this Court I mean, I don't I think they think that these cases are essentially over. And I don't think I don't think they see the need for the Supreme Court's review either. With regard to the Federal Circuit is it your view that the economic substance test has no place or that the actual test that they applied is not the right one? The latter, Your Honor. They should be asking whether it has a reasonable prospect for pre-tax profit not whether there's a substantial change in the taxpayer's economic position. Because that second formulation is, in our view, an unbounded and sort of gestalt impressionistic test which doesn't really follow in an area where Congress has laid out extremely clear and simple rules that have been complied here when the government concedes. I mean, Congress says we don't want double taxation, we don't want effective rebates, and we want foreign and domestic taxes to be treated the same. And that's the rules that this Court, those are the boundaries to the economic substance doctrine in this area. A couple of things. First, I'd like to thank everyone, including Amicus, for the excellent briefs. It's been very helpful to us. Secondly, we have posted on the docket of the case a letter we received individually from a tax professor at NYU Law School which enclosed an article which will soon be published. We wanted you to be aware that we have received the article. It's the sort of thing that had it already been published, we could simply refer to. But let me just call that to your attention. Thank you, Your Honor. The government has reserved time. A couple quick points, if I may. Again, the reliance on the treaty is completely misplaced. The UK is not complaining about the government's litigation of the Sir Laver Starr's case. In fact, as we pointed out in our reply brief, the UK had alerted us to the Starr's transaction back in 2005 and advised us to investigate if it could involve foreign tax credit abuse. What about the question Judge Burroughs just asked about the Federal Circuit opinion and the contours of the economic substance doctrine that they used? The answer was it was inconsistent with the way the First Circuit has looked at these problems. We don't think it's inconsistent. We think that it's the Circuit, as well as the Federal Circuit, and the other Circuits, consider all the facts and circumstances to determine whether there's true economic gains going on or is it just tax gains. It's consistent with the Supreme Court's articulation in Frank Ryan, which is that there's no simple way to determine whether a transaction has economic substance. The Court looks at a number of factors and all the relevant facts. And the argument is if it has a reasonable prospect of a pre-tax profit, that is sufficient to meet any economic substance test. And we shouldn't go beyond that. What's wrong with that? What's wrong with that is they use the phrase pre-tax. Pre-tax doesn't mean pre-consideration of all taxes. It means pre-consideration of the lowest tax benefit going to consideration. So the economic substance doctrine says here's the lowest tax benefit that's been claimed. In this case, it's for tax credits. In other cases, it's other benefits. And just regarding that, let's look at all the other transaction costs, one of which would be foreign taxes as an economic matter. It should be treated as any other cost. That's the second to be explained, and that in fact is the way Congress understood and enforced the position of the Federal Circuit and the Second Circuit when they contemplated the doctrine in 2010. I'm sorry I interrupted. Do you have other things you'd like to say? That's fine. Don't the board have any questions? No, thank you. Thank you very much.